Simon D. Van Steuben, Appellant, *v.* The Central R. R. Co. of New Jersey.

*Railroads—Corporations—Lease—Grant of power.*

One railroad company cannot lease to another its franchise of operating a railroad, built or authorized to be built, unless it can show a grant of power from the sovereign in express terms, or by necessary implication.

*Corporations—Foreign corporations—Conflict of laws—Comity.*

A corporation being the mere creature of local law can have no legal existence beyond the limits of the sovereignty where created. The recog-

nition of its existence, even by other states, and the enforcement of its contracts made therein depend purely upon the comity of these states, a comity which is never extended where the existence of the corporation or the exercise of its powers is prejudicial to their interest or repugnant to their policy.

*Public policy—How deduced.*

The public policy of a state is to be deduced from the general course of legislation, and the settled adjudications of its highest courts.

*Railroads—Leases—Public policy—Connecting roads—Acts of April* 23, 1861, *P. L.* 140, *and February* 17, 1870, *P. L.* 31.

The statutes of Pennsylvania conferring leasing powers on railroads are limited to railroad companies created by or existing under the laws of Pennsylvania, giving them leasing rights with foreign or domestic railroads, provided that they shall be connected with each other directly, or by intervening railroads.

A railroad lease made without clear and specific authority is against public policy and utterly void, and the liability of the lessor is entirely unaffected by the void lease.

A railroad company, which was a corporation of the state of New Jersey, leased a railroad belonging to a corporation of the state of Pennsylvania. Subsequently the lessee executed a lease of its own roads and its leased roads to another New Jersey railroad company whose line was not shown to be in any way connected with the railroad of the Pennsylvania corporation. *Held,* (1) that the law of Pennsylvania, and not the law of New Jersey, must determine the validity of the lease; (2) that the lease was void under the Pennsylvania acts of April 23, 1861, P. L. 140, and February 17, 1870, P. L. 31, both of which acts require that the lessor and the lessee's roads shall be connected either directly or by an intervening line.

*Negligence—Railroads—Sparks from engines—Evidence.*

In an action against a railroad company to recover damages for loss by fire caused by the alleged emission of sparks from a locomotive, the case should be submitted to the jury where witnesses for the plaintiff testify that the engine which was alleged to have caused the fire had on various occasions thrown out coals of unusual size.

Where a witness in the examination in chief testifies to a particular fact, and on cross-examination says that she was mistaken, and the only reason she gives for changing her testimony was that another person had told her that she was mistaken, although such person was not present at the time of the occurrence,—the testimony of the witness should not be withdrawn from the jury.

Argued March 9, 1896. Appeal, No. 87, July T., 1895, by plaintiff, from judgment of C. P. Northampton Co., July T., 1895, No. 87, on verdict for defendant. Before Sterrett, C. J., Williams, McCollum, Dean and Fell, JJ. Reversed.

Trespass to recover damages for property alleged to have been destroyed by fire through the negligence of defendant. Before SCOTT, J.

The facts appear by the opinion of the Supreme Court.

Plaintiff, by nine separate offers, proposed to prove by Joseph Applegate, Eugene Graver, Bishop Judd, John Ruple, William Root, William R. Wohlback, Eugene Kindt, Edna Redener and Mrs. Emma Kindt, that during that summer, and shortly before and shortly after the particular fire which caused the destruction of the buildings and property for which the present action is brought, there were large sparks of fire thrown by passing locomotives on this railroad, of the size of a man's fist, a walnut, a hickory nut, a considerable distance from the track, and that many of them were thrown in the air as high as a hundred feet.

The offer was objected to as incompetent and irrelevant.

By the Court: The objection is sustained because the proposition of the plaintiff does not embrace an offer of proof that the emission of these sparks was from the engine identified as No. 315, and for the reasons given by the court in granting the defendant's motion to strike out this testimony.    Plaintiff excepts.    Bill sealed.  [3, 4, 5, 6, 7, 8, 9, 10, 11.]

Plaintiff offered to prove by Mrs. Amelia Steuben that during the time that she lived upon this farm a coal of fire was thrown from a locomotive on the track of this railroad in question and was thrown upon the porch in front of the summer-house; to be followed with proof that the distance from the place where the locomotive was at the time to the place on the porch where the coal fell was one hundred and seventeen feet, for the purpose of showing the possibility that a coal of fire could be thrown this distance, as is indicated by the evidence where this fire commenced at this time.    It is not offered for the purpose especially with regard to this particular locomotive.

The offer was objected to as incompetent and irrelevant.

Objection sustained and bill sealed for plaintiff. [12]

The court gave binding instructions for defendant. [1, 2]

*Errors assigned* were (1,2) binding instructions for defendant; (3,12) rulings on evidence, quoting the bills of exceptions.

*O. H. Meyers*, and *W. S. Kirkpatrick*, for appellant.—The evidence as to the defendant's negligence in the management of its locomotive was sufficient to submit to the jury: Henderson v. R. R., 144 Pa. 477; P. & R. R. Co. v. Hendrickson, 80 Pa. 185; R. R. v. Schultz, 93 Pa. 341; Lehigh Valley R. R. v. McKeen, 90 Pa. 123; R. R. v. Watson, 81* Pa. 293. The court virtually decides that the testimony of Edna Redener cannot be considered by the jury and that, if they do, they must give no effect to it whatever. This is legal heresy, pure and simple: Ely v. R. R., 158 Pa. 233; Kohler v. Penna. R. R., 135 Pa. 346; Glase v. Phila., 169 Pa. 492; Huyett v. R. R., 23 Pa. 374; Longenecker v. R. R., 105 Pa. 332.

The Central Railroad Company of New Jersey had no legal authority under the Pennsylvania statutes to lease the Lehigh & Susquehanna Railroad to the Port Reading Railroad Company, a foreign corporation: Act of April 23, 1861, sec. 1, P. L. 410; Act of March 17, 1869, sec. 1, P. L. 11; Act of February 17, 1870, sec. 1, P. L. 31; Abbott v. R. R., 80 N. Y. 27; Ohio & Miss. R. R. v. Dunbar, 20 Ill. 623; 1 Redfield on Railways, sec. 142, Pl. 2; Ottawa R. R. v. Black, 79 Ill. 262; Troy & Boston R. R. v. B., H. T. & W. R. R., 86 N. Y. 107; Shrewsbury & B. R. R. v. L. & N. B. R. R. Co., 8 House of Lords, 113; Pierce on Railroads, 283; 5 Cases in Gen. Dig. (U. S). 1752, Pl. 18.

The lease of the Central Railroad Co., if in fact to the Reading, was not a lawful lease of its L. & S. railroad and property, under the laws of New Jersey: Attorney General v. C. R. R. Co. of N. J., 50 N. J. Law, 52.

*Edward J. Fox*, with him, *James W. Fox*, for appellee.—There was no sufficient proof of negligence: Henderson v. R. R., 144 Pa. 487; Kohler v. R. R., 136 Pa. 346; Ely v. R. R., 158 Pa. 233; Ford v. Anderson, 139 Pa. 261; R. R. v. Yerger, 73 Pa. 121; Whelan v. Hardisty, 8 El. & Bl. 262; Jennings v. R. R., 93 Pa. 337; Post v. R. R., 108 Pa. 585; Erie Ry. v. Decker, 78 Pa. 293; R. R. v. Page, 21 W. N. C. 52; Huyett v. R. R., 23 Pa. 374; Hendrickson v. R. R., 80 Pa. 189; Longenecker v. R. R., 105 Pa. 332; R. R. v. Jones, 128 Pa. 314.

Where a statute authorizes a lease, the lessee assumes during the existence of the lease all the duties and obligations of the lessor and, from the time that it enters upon the possession of

the road, becomes solely liable for all injuries resulting from its management unless it is operating the road in the name of the lessor: Wood on Railway Law, sec. 490; Ditchett v. R. R., 67 N. Y. 425; Miller v. R. R., 47 Am. & Eng. R. R. Cases, 369; Arrowsmith v. R. R., 59 Am. & Eng. R. R. Cases, 79; Com. v. South Penna. R. R., 1 Pa. C. C. 214; Gummere v. Lehigh Valley R. R., 12 Pa. C. C. 106.

OPINION BY MR. JUSTICE McCOLLUM, November 11, 1896:

Three questions are raised by the specifications of error: (1) Was the action, in view of the leases given in evidence, maintainable against the defendant? (2) Was there sufficient evidence of negligence to submit to the jury? (3) Was the evidence as to the condition of the unidentified engines properly excluded? These questions will be considered in the order in which they are stated.

The action was brought to recover damages for the destruction of plaintiff's buildings by fire caused by the alleged negligence of the defendant as the lessee of the Lehigh & Susquehanna Railroad. To fix the liability upon the defendant company, the plaintiff gave in evidence the charter of the Lehigh Coal & Navigation Company, under which the Lehigh & Susquehanna Railroad was constructed, and the charter of the defendant company, a corporation of the state of New Jersey, and a lease of the former road by the latter company for a period of nine hundred and ninety-nine years, dated March 31, 1871. The defendant gave in evidence a lease dated February 12, 1892, by the defendant company to the Port Reading Railroad Company, a corporation of the state of New Jersey, of their railroads and leased roads, including the Lehigh & Susquehanna Railroad, with the rolling stock, for the balance of the term of nine hundred and ninety-nine years. The Port Reading Railroad was projected to extend " from a point on the Bound Brook Railroad to a point on the Arthur Kill on the Staten Island Sound," and was not shown to form a continuous route with the Lehigh & Susquehanna Railroad, and was unfinished at the time of the execution of the lease. The plaintiff in rebuttal gave in evidence a lease, dated February 11, 1892, of the Lehigh Valley Railroad Company of their roads in Pennsylvania, with the rolling stock, to the Philadelphia & Reading Railroad Company

for a term of nine hundred and ninety-nine years, together with a tripartite agreement dated February 12, 1892, between the defendant company, the Philadelphia & Reading Railroad Company and the Port Reading Railroad Company, and further evidence to show that the Philadelphia & Reading Railroad Company, and not the Port Reading Railroad Company, was the real lessee from the defendant company, in contravention of the laws of Pennsylvania inhibiting the merger of parallel and competing lines, and the laws of New Jersey restricting the execution of leases made by foreign corporations.    The court took the case from the jury, one of the grounds specified being that under the evidence the action was not brought against the proper party.

The plaintiff's evidence given in chief was sufficient to establish a liability on the part of the defendant for negligence until overcome by countervailing evidence on the part of the defendant.    If the defendant's evidence is insufficient for that purpose it will not be necessary to consider the testimony in rebuttal. The first question which presents itself for consideration therefore is whether the lease of the defendant company to the Port Reading Railroad Company was valid.

The general rule of law governing the execution of railroad leases is thus stated by Mr. Justice SHARSWOOD in the Pittsburg & Connellsville Railroad Company v. The Bedford & Bridgeport Railroad Company, 81* Pa. 104 : " One railroad company cannot lease to another its franchise of operating a road built or authorized to be built, unless it can show a grant of power from the sovereign in express terms or by necessary implication.    In England, courts of equity have frequently enjoined railroad companies from carrying leasing contracts into effect which wanted the express authority of Parliament : 1 Redfield on Railroads, 592.    The general canon of construction applicable to legislative grants of this class, derogating as they do from common right and public policy, requires that the intention should be very manifest, if not to be unequivocally expressed, at all events not to depend upon ambiguous phrases rendering the implication doubtful."    Pittsburg, etc., Railroad Co. v. Allegheny County, 63 Pa. 126, and Stewart's Appeal, 56 Pa. 413, are authorities for the same principle.

The defendant points to the statute of New Jersey for its

authority for the execution of the lease by which it seeks to escape liability. But the defendant company and the Port Reading Company are foreign corporations, and this leads us to inquire, what is their standing in our courts? "A corporation being the mere creature of local law can have no legal existence beyond the limits of the sovereignty where created. The recognition of its existence even by other states, and the enforcement of its contracts made therein depend purely upon the comity of these states, a comity which is never extended where the existence of the corporation or the exercise of its powers is prejudicial to their interest or repugnant to their policy:" Paul v. Virginia, 8 Wallace, 181. The public policy of a state is to be deduced from the general course of legislation and the settled adjudications of its highest courts: American & Foreign Christian Union v. Youndt, 101 U. S. 356. It has been ruled that an act, although held to be unconstitutional, may express legislative policy as to foreign corporations: Empire Mills v. Alston Grocery (Texas), 12 Lawyer's Reports, annotated, 366.

The next question which we are called upon to consider is the public policy of our state as to the leasing of railroads. All of the statutes to which our attention has been directed, conferring leasing powers upon railroads, are limited to railroad companies created by or existing under the laws of this commonwealth giving them leasing rights with foreign or domestic railroads, provided they shall be connected with each other directly, or by intervening railroads. It has been decided that the terms of a statute providing for the leasing of continuous lines must be held to refer to corporations of the state unless there is an expressed intent that they are to apply to foreign corporations: Freeman v. Minneapolis & St. Louis Railroad Company (Minn.), 7 Am. & Eng. Railway Cases, 411. In Empire Mills v. Alston Grocery, supra, it was held that the repeal of the statute granting the privilege of organizing mercantile corporations was a direct prohibition against the operation of such corporations within the state, and therefore the law of comity did not require that a mercantile corporation organized under the laws of another state should be allowed to do business therein. In Methodist Church v. Remington, 1 Watts, 219, it was held that the equitable powers of the courts will not be exercised to enforce a trust which is against

the policy of the state as expressed by the legislature in parallel cases.

The warrant for the Port Reading lease must be found, if at all, in the legislation of this state. The defendant company relies upon the lease as a defense to the suit. It ought therefore to show that it is such a lease as is authorized by our laws. The act of April 23, 1861, P. L. 140, and the act of February 17, 1870, P. L. 31, expressly confer upon railroad companies leasing powers, but in each the grant of these powers is upon a condition named therein. To these acts the defendant must look for its authority to make the lease. It cannot be found in the act of March 24, 1865, P. L. 49, or in the act of April 14, 1868, P. L. 100. Neither of them expressly or by necessary implication confers leasing rights. The act of 1861 confers the right to lease "provided that the roads of the companies so contracting or leasing shall be directly or by means of intersecting railroads connected with each other," and the act of 1870 confers it, "provided however that such road or roads so embraced in any lease, . . . . shall be connected, either directly or by intervening line, with the railroad or railroads of said company or companies of this commonwealth so entering into such lease . . . . and thus forming a continuous route or routes for the transportation of persons and property." There is nothing in the Port Reading lease or in the evidence in the case which shows that the Port Reading Railroad was connected directly or by intervening line with the Lehigh & Susquehanna Railroad, and it is not claimed in the printed argument of the appellee that they were so connected. As the defendant company relied on its lease to the Port Reading Company for exemption from liability for loss or injury caused by the negligent operation of the Lehigh & Susquehanna Railroad, it was bound to show a warrant for the lease in the statutes of this commonwealth. This, as we have seen, it failed to do. It is well settled that, "where the lease is made without clear and specific authority it is utterly void, because public policy very strongly opposes any attempt on the part of the company to relieve itself of its high obligations by transferring them to another company, and where this is the case the liability of the lessor is entirely unaffected by the void lease. It remains the same, the lessee being regarded merely as the agent:" Wood on Railroads, 1055–6, and cases cited.

We have not considered the appellant's contention that the lease to the Port Reading Company was in fact, though not in form, a lease to the Philadelphia & Reading Railroad Company, nor whether the evidence was sufficient to warrant a finding that the Lehigh Valley Railroad and the Lehigh & Susquehanna Railroad are parallel and competing lines. While these are questions of fact to be determined upon evidence applicable to them in a proceeding to cancel the lease, the question whether they can be raised in an action for a loss or injury caused by negligence in the operation of the road does not appear to have been presented to or considered by the court below, nor was it brought to our notice in the argument on appeal. We express no opinion on this question now, but we suggest that it ought to be raised, argued and considered in the court below and here before there is a final decision of it.

The next question to be considered relates to the sufficiency of the evidence offered to prove the negligence of the defendant. The buildings destroyed were a barn, wagon shed, grain shed, and pig stye, located in close proximity to the railroad tracks. The distance from the west bound track to the place where the fire originated in a pile of straw at the rear of the barn was about one hundred and twenty-two feet. The fire occurred on the 19th of July, 1892, about 6 o'clock in the evening, at the close of the day's work of threshing. It was first seen by the hired girl, Edna Redener. She testified that immediately before she saw the fire she had been sent from the house to the woodpile for some wood, and that while she was standing on the porch of the house she saw the west bound coal train with engine No. 315 pass the premises going west. . . . On reaching the woodpile she saw the fire, and she at once notified Eugene Kindt, the tenant of the farm, who was in the barn sweeping the floor. She further testified that she had seen this engine on different occasions throw coals as large as hickory nuts. Eugene Kindt testified that from the front part of the barn he saw the tail end of a train going west when he started toward the fire, and when he first saw the fire he could have covered it with a big hat. John Ruple testified that he lived about one hundred and fifty rods west of the plaintiff's buildings, and some one hundred and twenty yards from the railroad; that he was on his porch watching for his brother on an east bound

train at the time the fire started; that the east bound and west bound trains passed each other about seventy-five yards west of the barn; that the west bound train was moving at the rate of twenty-five or thirty miles an hour and threw fire some forty or fifty feet up in the air; that it set fire to the grass alongside of the track, and that "the tail end of the east bound train had not passed yet when the fire broke out." John Warg testified that he had seen No. 315 throw coals the size of a hazel nut from one hundred and fifty to two hundred feet. A number of other witnesses testified that unidentified locomotives on this railroad threw large coals shortly before and after the fire.

Witnesses were produced by the defendant who testified that engine No. 315 was furnished with a spark arrester of an improved pattern, and that it had been examined shortly before and after the fire and found in good condition. Defendant then recalled Edna Redener for further cross-examination. She testified that she was mistaken when she stated in her former examination that she had seen engine No. 315 throw sparks as large as hickory nuts, but the reason she gave for her mistake is not satisfactory. The reason she gave was that Mrs. Kindt told her she was mistaken, although she admitted that Mrs. Kindt was not present at the time she before thought she had seen the sparks. Mrs. Kindt was also called by the defendant for further cross-examination and testified that the fire had started before the east bound train had passed. The court thereupon struck out all the evidence as to the condition of the unidentified engines and refused to receive similar offers, and holding that the plaintiff had failed to make out a case gave binding instructions for the defendant.

The evidence has been briefly reviewed in order to determine whether it was of such a character as to warrant a submission to the jury. If the action of the court in excluding the evidence in regard to sparks thrown and fire set by unidentified engines was correct, still there was sufficient evidence of negligence to warrant a jury in finding it. Besides the witness Edna Redener, there were two other witnesses who testified among other things as to the unusual distance to which the sparks from engine No. 315 were borne. Such evidence required the submission of the case to the jury notwithstanding the testimony that the engine was provided with a sufficient

spark arrester: Huyett v. Railroad Co., 23 Pa. 374; Railroad Co. v. Hendrickson, 80 Pa. 182; Railroad Co. v. Watson, 81* Pa. 293; Railroad Co. v. McKeen, 90 Pa. 122; Railroad Co. v. Schultz, 93 Pa. 341, and Henderson v. Railroad Co., 144 Pa. 461.

We also think the court erred in holding that the testimony of Edna Redener should not be submitted to the consideration of the jury. When the unsatisfactory reason for correcting her testimony is considered, we think the jury should have been permitted to pass upon it. The same may be said of the evidence as to the unidentified engines. Mrs. Kindt's testimony that the fire had started before the east bound train had passed was not undisputed. The positive evidence of John Ruple left the question in doubt, and that doubt should have been solved by the jury and not by the court: Kohler v. Railroad Co., 135 Pa. 346; Ely v. Railroad Co., 158 Pa. 233, and Glase v. Philadelphia, 169 Pa. 492.

Judgment reversed and venire facias de novo awarded.