| 98 | 316 |
| 144 | 478 |

# Albert and Lahr *versus* Northern Central Railway Company.

1. In an action against a railway company to recover damages for a loss of plaintiff's property by a fire alleged to have been caused through the negligence of the company defendant in permitting sparks to escape from its engines, the burden is on the plaintiff to prove the alleged negligence.

2. When in such case it appeared that plaintiff's loss, if indeed it was caused at all by the defendant's negligence, was attributable entirely to the escape of sparks at a particular time from one of two particular engines, evidence was held inadmissible on the part of the plaintiff, in order to prove defendant's negligence, to the effect that sparks of unusual size had been emitted for some time prior to the fire by defendant's engines generally.

3. Where a witness testifies to having seen a certain event take place, evidence is admissible, in order to discredit his testimony, to the effect that there were obstructions between the place where he was at the time and the place where the event occurred, which would have materially interfered with his view. Whether or not those obstructions must have altogether prevented the witness from observing what he has testified to, is for the jury.

4. Where a person brings an action to recover damages for a loss by fire of premises which he alleges to have belonged to him, the defendant

[Albert *v.* Northern Central R. R. Co.]

may, in order to contradict the allegations of ownership, put in evidence the record of a judgment recovered by another party against an insurance company for the loss. This is some evidence, though not strong or important, that the plaintiff was not the owner.

June 10th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ., GREEN, J., absent.

ERROR to the Court of Common Pleas of *Northumberland county :* Of May Term 1881, No. 22.

Case, by Isaac Albert and Franklin Lahr, against the Northern Central Railway Company, to recover the value of a saw-mill and lumber, destroyed by fire alleged to have been caused by the defendants' negligence.

On the trial, before ROCKEFELLER, P. J., the following facts appeared :—The plaintiffs' mill was situated so that its nearest point was at the distance of 109 feet from the railroad. On the night of June 11th 1874, it was destroyed by fire. The plaintiffs alleged that the fire was caused by sparks of an unusually large size thrown out by a locomotive of the defendant company. There was no direct evidence that the fire was caused in this manner ; but the testimony on both sides indicated that if the fire was so caused, the sparks came from either one or the other of two locomotives (Nos. 21 and 126) which drew the first and the second sections of the " Anchor freight train " on the night in question. The sections were running about a mile and a half apart. Several witnesses testified that these two engines attracted their attention, about the time and place in question, because of the unusual quantity of fire and sparks thrown from their stacks. There was a strong wind blowing from the direction of the railroad towards the mill. Soon after the second section passed the mill, the fire was discovered.

The saw-mill had been working, driven by a stationary engine, up to the usual time of quitting work on the evening in question. Two brakemen on the second section testified that they saw a light in the engine-house or boiler-room of the mill when they passed it. Other witnesses testified that they had passed the mill a short time before the fire and saw no light or fire. The defendant proved that the two engines in question were provided with spark-arresters of the most approved construction, which were examined at the shops of the company both before and after the run of June 11th 1874, and were found to be in perfect condition. Their employés also testified that there was not any unusual or improper emission of sparks from either of the said engines on the night in question.

The plaintiffs in several offers proposed to prove that on the next morning after the fire, cinders of the size of a hickory nut

and larger were found on the ground between the railroad and the mill, which had been thrown from the defendant's locomotives; that within a month previous to June 11th large sparks and live coals were thrown from locomotives, passing the plaintiffs' mill about the same hour in the night, of such size as would not pass through any approved spark-arrester, some of them being over one inch in diameter, and thrown from one hundred to two hundred and fifty feet from the railroad; that one of these was thrown a distance of ninety feet over the plaintiff's dwelling house and set fire to his premises, and others set fire to buildings, woods, fences, grain and grass for a long distance in the neighborhood of the plaintiff's mill. Objected to, because the offers are not confined to the night in question, nor to the two locomotives, one or the other of which the plaintiffs claim caused the fire. Objection sustained; exception. (Assignments of error 1 to 5.)

The defendants, for the purpose of contradicting the testimony of a witness for the plaintiff, who had testified that he saw the fire from a particular point of view, offered to show that, owing to an intervening embankment of the railroad, it would have been difficult if not impossible for him to have seen it from that point. Objected to. Objection overruled. Exception. (Sixth assignment of error.)

The defendants, for the purpose of showing that the title to the mill property was not in Albert and Lahr, at the time of the fire, but that it belonged to the plaintiff Albert, and one Bower, trading as Albert & Bower, offered in evidence the record of a judgment in a case of Albert and Bower *v.* The Columbia Insurance Company, in the court of Common Pleas of Northumberland county. Objected to. Objection overruled. Exception. (Seventh assignment of error.)

In answer to several points submitted by the defendants, the court instructed the jury, substantially, that the mere fact that sparks were thrown from the engines, was not evidence of negligence; that even if the mill was burned by sparks from an engine passing upon the railroad in the regular course of the business of the company, such fact would form no ground for an inference or presumption by a jury that such burning was caused by negligence, nor is such burning any evidence of negligence on the part of the railroad company or its servants; that if the defendant's engines were provided with the best approved furnaces, smoke-stacks and spark-arresters, which were in good order, and if the engines were properly run and managed, the defendant company would not be liable for the loss, even though the saw-mill was burned by fire accidentally issuing from such engine or engines; that, in such case, the owner of

[Albert *v.* Northern Central R. R. Co.]

property near a railroad must run all the risks from a proper and careful use of the road; and if a loss accidentally occurs, he has no remedy against the railroad company.

The court submitted to the jury the question of the defendant's negligence, and in the general charge said, inter alia : " If the plaintiffs have satisfied you from the evidence in this case that their mill was set on fire and burned by the defendant's locomotives, still they must go further and prove the existence of the fault or negligence alleged, and that it resulted in the damage to them of which they complain. · · · · · As I have already stated, even if you do decide that this mill and other property was destroyed by fire emitted from either of these locomotives, still there is another question to be determined by you before you can find a verdict in favor of the plaintiffs, for it makes no difference whether this mill was burned down by the defendant's locomotives or not, if there was no negligence, no mismanagement, no carelessness on the part of the railroad company, or its employés, in running these locomotives.

" If the plaintiffs allege that the defendant, the railroad company, had not sufficient spark-arresters or appliances to prevent an unusual and unnecessary quantity of sparks from being emitted from their locomotives, the law requires, as I stated, that they should prove it, but they are not bound to prove it by positive or direct testimony. That fact may be inferred like any other fact. We think we are bound to submit that question, to be determined by you from all the evidence in the case, and the only evidence that I now recollect of, is merely the testimony as to an unusual quantity of sparks and fire thrown by these locomotives on the occasion of the burning of the saw-mill and other property. If you can reasonably and fairly infer from this evidence that the defendant's spark arresters were not in order, or that they had not spark arresters on, or, if they had, that they were out of order, and not sufficient to prevent the emission of sparks, you have the right to so find. Whether I am right in submitting this question to you to be determined from this evidence alone, I am not clear, but I say to you at this time that I do submit that question to you to be determined by you from this evidence. In the case of Hendrickson *v.* The Reading Railroad Company, there was evidence that the locomotives were run at an unusual speed, and that they set fire to grass and fences, as well as the plaintiff's property along the line; and all this was submitted by the court as evidence of carelessness and improper running on the part of the employés of the railroad company. But we have no such evidence in this case, you only have the evidence as to these locomotives having emit-

ted an unusual amount of fire and sparks, as testified to by the plaintiff's witnesses."

Verdict and judgment for the defendant. The plaintiffs took this writ of error, assigning for error the several rulings on the admission of evidence, the answers to defendant's points and the charge of the court, as above set forth.

*S. P. Wolverton* (*Joshua W. Comly* with him), for the plaintiffs in error.—Having shown by circumstantial evidence that the plaintiff's mill was in all probability set on fire by sparks thrown to an enormous distance by either Engine 21 or 126, our offers were admissible to show that for a month previous to the fire, engines passing the mill at about the same hour in the evening threw out cinders and live coals of an usually large size to a great distance from the track; this for the purpose of showing that the spark arresters of those engines were defective. If it was alleged that such large cinders did not come from either of those engines, it was peculiarly within the power of the defendants to show that. But we should have been permitted to show the fact that numerous fires had been caused in that manner, and to have produced in evidence specimens of the cinders found the next morning after the fire between the railroad track and the mill. Such evidence, in the absence of contradiction, was the best which the nature of the case would permit, and would warrant an inference by the jury, that the defendant's engines were not in proper condition on the night of the fire. Evidence of other fires occurring about the same time has been held to be admissible to show negligence: Huyett *v.* Reading R. R. Co., 11 Har. 373; Lehigh Valley R. R. Co. *v.* McKeen, 9 Nor. 122; Penna. R. R. Co. *v.* Stranahan, 29 P. F. Smith 405; Field *v.* New York Central R. R. Co., 32 N. Y. 346; Grand Trunk R. R. Co. *v.* Richardson, 1 Otto 454. The instruction of the court that, even if the mill, 109 feet from the railroad, was burned by sparks from the defendant's engines, such fact constituted "no ground for an inference that such burning was caused by negligence, and was no evidence of negligence," really took the case from the jury, and was in opposition to almost every decision on the subject. Experience has demonstrated that railway companies, by the use of mechanical contrivances, can effectually prevent the escape of fire from engines, which could communicate fire to such a distance, and railroad companies should be held to a strict measure of accountability for failure of duty in such respect: Lackawanna & Bloomburg R. R. Co. *v.* Doak, 2 P. F. Smith 381; Shearman and Redfield on Negligence, section 333; Wharton on Negligence, page 71. The other portions of the charge as-

[Albert *v.* Northern Central R. R. Co.]

signed for error, as well as the tenor of the whole charge, tended to unduly influence the jury to find a verdict for the defendant ant.

*J. B. Packer* (with him *W. C. Packer*), for the defendant in error.—The burden of proof was on the plaintiffs to show negligence. The vague testimony that the engines 21 and 126 threw unusually large sparks on the night of the fire, was of itself insufficient to shift the burden ; and the offers to show that engines of the defendant company had thrown large sparks within a month previous to the fire, not being directed to the particular engines alleged to have caused the fire, were clearly irrelevant.

Mr. Justice PAXSON delivered the opinion of the court, October 3d 1881.

The first five assignments of error raise substantially the same question and may be considered together. The evidence below established the fact that if the plaintiffs' property was destroyed by fire communicated by defendant's locomotives, it was done by engine No. 21 or engine No. 126, and by no others. Hence it is entirely clear that evidence that other engines upon some other day threw out an unusual amount of large sparks and live coals was immaterial, and if received could only have confused, and might have misled the jury. Nor would it have been evidence to show that the spark-arresters on engines 21 and 126 were out of order. This point does not need elaboration, for it has been expressly ruled in Erie Railway Company *v.* Decker, 28 P. F. S. 293. Huyett *v.* The Philadelphia & Reading Railroad Company is not in point. There the evidence was that the plaintiff's house was set on fire by sparks from some one or more of several engines passing by on that day and about the same hour. Sparks were seen flying from the engines to the distance of more than fifty yards, and fences and fields were set on fire in several places about the same time. So, in Lehigh Valley R. R. Co. *v.* McKeen, 9 Norris 123, the allegation was that the fire was caused by engine No. 133, going northward, and the evidence in relation to the character of the sparks was limited to those thrown out by the engine in question on the day of the fire and for some time before.

There was no error in admitting the evidence referred to in the sixth assignment. The fact that the foliage and trees might have obstructed the view of the witness was a question for the jury, as affecting the value of his testimony ; it did not bear upon its competency. Nor are we able to perceive any error in

2 OUTERBRIDGE—21

the admission of the evidence referred to in the seventh assignment. It tended to contradict Isaac Albert as to the ownership of the property. It was some evidence, though not very strong or important. But it was competent.

The remaining assignments need not be discussed. In the answers to points and in his general charge to the jury the learned judge laid down the law accurately so far as it is developed by the assignments of error.

Judgment affirmed.