# John Hancock Ice Company, Appellant, *v.* Perkiomen Railroad Company.

*Negligence—Railroad companies—Sparks—Presumption—Evidence—Case for jury.*

1. In an action against a railroad company to recover damages for loss by fire, no presumption of negligence arises simply from the fact that the defendant's locomotive communicated fire to the plaintiff's premises. The plaintiff must go further and show by evidence, direct or circumstantial, not only that the sparks from the defendant's engine communicated the fire to his building, but that they were emitted by reason of the defendant's negligence. When such evidence has been introduced and the court holds it sufficient to go to the jury for the purpose of showing negligence, it is not a presumption of law that the defendant is called upon to meet but affirmative evidence showing the defendant's negligence. This can only be met by other evidence, and when such is introduced for the purpose, there is a conflict of evidence, and that necessarily sends the case to the jury.

2. In an action against a railroad company to recover damages for the destruction of a building by fire, the plaintiff introduced evidence which tended to show that the building was fired from a spark or sparks emitted from a particular engine; that the engine labored very hard, and emitted much smoke when it started with its load on an up grade siding; that the day was windy and the smoke blew over the roof where the fire started; that immediately before and after the fire large sparks or pieces of live cinder were emitted from the stack of the engine; that there was no other source of fire anywhere in the vicinity, and that there was no stove nor fire in the building. The defendant offered expert witnesses who testified that the spark arrester was of the most approved form and pattern, and of the kind in general use, and that it was entirely efficient for the purpose. The trial judge withdrew the question from the jury as to whether the spark arrester was or was not of the proper form and pattern, and of

the kind in general use, and was or was not efficient for the purpose, and merely left it to the jury to determine whether the spark arrester was out of repair, and whether the engine was carefully and properly operated at the time the building was fired. *Held,* that it was reversible error for the court to withdraw from the jury the question as to whether the spark arrester was of proper form and pattern, and efficient for the purpose for which it was used.

Argued Feb. 2, 1909.  Appeal, No. 12, Jan. T., 1909, by plaintiff, from judgment of C. P. Montgomery Co., March T., 1908, No. 6, on verdict for defendant in case of John Hancock Ice Company v. Perkiomen Railroad Company.  Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ.  Reversed.

Trespass to recover damages for the destruction of an ice house by fire.  Before SWARTZ, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial the court charged in part as follows:

[I charge you, under this evidence, that you cannot find that this spark arrester was not of the proper style or character so as to comply with the requirements of the law.  I listened carefully to the arguments of counsel, and to this evidence, and it is my duty to give you the law as I understand it.  So far as I recall this testimony—and I have considered it carefully—there is no witness who has condemned this spark arrester as not being of the proper style, or make, or form, or pattern, but the men of knowledge and experience in the business come upon the stand, and they tell you, from their knowledge and experience, they adjudged it in their opinion to be a safe or proper spark arrester; that it is as good as any that could take its place for the fuel that is to be used in the fire box.  This spark arrester also has been in use for some years.  You have heard the testimony.  There is no one here that says it is not a spark arrester of the style or type that is efficient for the purposes for which it is placed into the engine.  Therefore, I cannot allow you, who are not experienced in this business, to say that the men who have made this a study, or who have examined this style of spark arrester, I cannot allow you to overrule them and say that this is an inefficient spark arrester

so far as the design and pattern are concerned. And you will take the law from the court.] [1]

[Now we come to the testimony of Mrs. Fleger, the only other testimony upon this question of seeing sparks upon other days. Here also I caution you to dismiss from your minds everything that was said about the throwing of sparks, as long as six weeks after this fire, because that is too long a period. You will take the law from the court. The Supreme Court does not allow any such extended period as that. It does allow a reasonable period, at or about the time of the fire, a short time before, or a short time after, because that is the only way perhaps that the plaintiff would have any means of giving evidence as to the character of that engine, or as to the condition of the spark arrester. But the law will not allow us to go six weeks away from the fire. Therefore, you will dismiss anything that was said about May 13.] [2]

[Inasmuch as it is alleged that a particular engine caused the injury complained of, the inquiry is limited to the condition of that engine at the time, and evidence as to that particular engine upon another occasion six weeks later or of other engines unidentified, is irrelevant and cannot be considered by the jury.] [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Nicholas H. Larzelere,* with him *Harold B. Beitler,* for appellant.—The instruction contained in the portion of charge first assigned was erroneous: Lehigh Coal & Nav. Co. v. Evans, 176 Pa. 28; L. & B. R. R. Co. v. Doak, 52 Pa. 379; Frankford & Bristol Turnpike Co. v. R. R. Co., 54 Pa. 345; Huyett v. R. R. Co., 23 Pa. 373; Kane v. Philadelphia, 196 Pa. 502; Matthews v. R. R. Co. 18 Pa. Superior Ct. 10; Phila. & Reading R. R. Co. v. Kerst, 2 Walker, 480; Rauch v. Smedley, 208 Pa. 175; Wessel v. Steel Co., 28 Pa. Superior Ct. 332; Penna. R. R. Co. v. Barnett, 59 Pa. 259; Johnson v. Bruner, 61 Pa. 58.

*Montgomery Evans,* with him *John M. Dettra,* for appellee.—There is a presumption that the railroad company did its duty

in supplying a proper spark arrester to its engine: Patterson v. R. R. Co., 210 Pa. 47; R. R. Co. v. Ritchie, 102 Pa. 425; Howard Express Co. v. Wile, 64 Pa. 201; R. R. Co. v. Heil, 5 W. N. C. 91; Titus v. R. R. Co., 136 Pa. 618; McGregor v. Penna. R. R. Co., 212 Pa. 482; Marsh v. R. R. Co., 206 Pa. 558; Holden v R. R. Co., 169 Pa. 1; Unger v. R. R. Co., 217 Pa. 106; Wade v. R. R. Co., 220 Pa. 578; Lonzer v. R. R. Co., 196 Pa. 610; Longenecker v. R. R. Co., 105 Pa. 328; R. R. Co. v. Stinger, 78 Pa. 219; R. R. Co. v. McElwee, 67 Pa. 311.

OPINION BY MR. JUSTICE MESTREZAT, March 15, 1909:

The plaintiff owned a large ice house along Perkiomen Creek in Montgomery county, Pennsylvania. The defendant company's tracks were located not far from the ice house in front of, and near which the company run a siding. About noon on March 30, 1907, defendant's engine 846 ran into the siding to pull out five loaded cars. The grade of the siding was steep at the starting point, and in starting with its load the engine labored very hard and emitted large volumes of smoke. About ten or fifteen minutes after the engine had started with the load, the roof of the ice house was discovered on fire which resulted in the destruction of the house and its contents. The loss was about $35,000. This action was brought to recover damages for the loss, the plaintiff alleging it was caused by the negligence of the defendant company. There was a verdict for the defendant, and judgment having been entered thereon the plaintiff has taken this appeal. The appellant complains in its first and second assignments of error in the charge, and in its third assignment of error in answer to the defendant's second point for charge.

It was claimed on the part of the plaintiff company in support of its allegation of negligence that the house was fired from a spark or sparks emitted from engine 846, that the spark was discharged by reason of an inefficient form or device of spark arrester, or by reason of the arrester being out of repair, or by the improper or negligent operation of the engine. In support of its contention the plaintiff introduced evidence to show that the engine labored very hard and emitted much smoke when it

started with its load on the up grade siding; that the day was windy and the smoke blew over the roof where the fire started; that immediately before and after the fire large sparks or pieces of live cinder were emitted from the stack of engine 846; that there was no other source of fire anywhere in that vicinity, and that there was no stove or fire in the building. This evidence was sufficient to send the case to the jury on the question of whether the fire from the engine had been communicated to the house: Philadelphia & Reading Railroad Company v. Hendrickson, 80 Pa. 182; Henderson v. Philadelphia & Reading R. R. Co., 144 Pa. 461. And the court properly held that it was also sufficient for submission to the jury on the question of the defendant's negligence: Philadelphia & Reading R. R. Co. v. Schultz, 93 Pa. 341; Van Steuben v. Central R. R. Co., 178 Pa. 367. The court in its charge said: "When the plaintiff shows facts and circumstances which show that this spark arrester is allowing larger sparks to escape than ought to escape, they having fire or heat or warmth sufficient to burn in them, or throws them out a greater distance, and of greater size than it ought to throw them, and has done that at one time or another time, or several times, then there is evidence before you to consider upon the question of negligence." The learned judge then points out the evidence produced by the plaintiff which justified the submission of the case to the jury. He also called attention to the evidence on the part of the defendant contradictory of the plaintiff's evidence tending to show negligence on the part of the company.

In the charge, the court submitted to the jury to determine whether the sparks were emitted from the engine and fire communicated thereby to the building by reason of the spark arrester being out of repair and in an improper condition, or by the improper or negligent operation of the engine. The learned judge instructed the jury, however, that there was no evidence to show that the spark arrester was not of the proper style, form or pattern, and was not efficient for the purpose for which it was placed in the engine, and withdrew that question from the jury. This is the subject of the first assignment, and raises the important and material question in the case.

We agree with the learned judge that the witnesses on the part of the defendant testified that the spark arrester on engine 846 was of the most approved style and pattern in use on freight engines for the fuel used in it. The several witnesses on the part of the defendant who testified in substantiation of that fact were all men of experience in that line and were skilled in the construction and use of spark arresters. If their testimony is credible there can be little doubt, in the absence of contradictory evidence, that the spark arrester on engine 846 was of a proper type and pattern, the one in general use and efficient for the purpose. As the learned judge said: "There is no witness who has condemned the spark arrester as not being of the proper style, or make, or form, or pattern." The engine was constructed for the use of hard coal and at the time of the fire hard coal was being used in it with a very small proportion of soft coal. The hard coal was what is known as buckwheat in the anthracite region, which is a fine coal. Such small percentage of soft coal is mixed with the fine hard coal, as testified by the witnesses, in order to prevent clinkers forming on the grates which will occur if the fine buckwheat anthracite coal is used exclusively.

The evidence shows that the use of the vertical screen is not desirable and is impracticable where the engine is operated exclusively by soft coal. The reason is because the tar in the soft coal thrown against the screen and close to the flues will adhere to the screen and close up the meshes, preventing the draft of the engine and thereby disabling it. It should be noted, however, that no witness testified that when soft coal is used as a fuel more sparks or larger ones are emitted by a vertical than by a horizontal arrester. On the contrary, the witnesses testified that the vertical screen is just as efficient in preventing the discharge of sparks, both in quantity and size, from the stack of the engine as the horizontal with the deflecting plate. The use of the horizontal instead of the vertical arrester when soft coal is used as the fuel is, as suggested above, to avoid the closing of the interstices by the tar which comes from the soft coal, and which results in disabling the engine by preventing a draft.

There was not a particle of evidence in the case to show that a three-eighths inch mesh was the screen in use on engine 846 at the time of the fire; on the other hand, the uncontradicted evidence was that it was a five-sixteenths mesh, and that that is a proper size mesh in a spark arrester used on a freight engine where the fuel is hard coal mixed with a small proportion of soft coal.

Without discussing the question further we are satisfied that the learned judge was entirely correct in declaring that the testimony, on the part of the defendant, if credible, showed that the spark arrester in use on engine 846 was of a proper design and pattern and one in general use on engines of this character.

Conceding the court was correct in its view of the effect of the defendant's testimony, did it commit error in withdrawing from the jury the question whether the spark arrester on engine 846 was efficient in design and pattern, and "as good as any that could take its place for the fuel that is to be used in the fire box?" We think this question must be answered in the affirmative. It is unquestionably true that in certain cases it is the duty of the court to declare as matter of law the establishment of a proposition supported by the uncontradicted and credible testimony in the case, but it is equally true, and we have time and again so held, that where there is conflicting evidence, or where the credibility of the witnesses is involved, the question is one for the jury and not for the court. In withdrawing the question from the jury, the learned judge misapprehended the state of the case as well as the evidence which had been offered and admitted at the time he made the ruling.

The negligence of the defendant could arise in either or all of three different ways: (a) from an inefficient style or pattern of spark arrester; (b) from a proper spark arrester which was out of repair; or (c) from the negligent operation of the engine. Sparks might have been discharged from the stack of the engine from either or all of these three causes. When the learned judge ruled the question, the plaintiff had shown, not by a presumption of law arising from the fact that the building had been fired by sparks from the engine, but by affirmative evidence that through the negligence of the defendant sparks had been

emitted which set fire to the plaintiff's building and caused its destruction. This evidence, as we have seen, consisted, inter alia, in the action of the engine when it started with its load on the heavy grade siding, the direction of the wind, the emission from the stack of the engine just before and after the fire of sparks or live cinders too large to be emitted from an engine stack having a properly equipped spark arrester. The evidence was sufficient in the opinion of the court to send the case to the jury to determine the negligence of the defendant. When the plaintiff company had produced this evidence it had met the burden imposed upon it, which was to show negligence as the basis of its cause of action without which it could not recover. If the plaintiff's evidence was credible, was believed by the jury, the sparks which fired the plaintiff's building had been emitted by reason of the negligent conduct of the defendant company in one or all of the three ways we have suggested. Had the case then gone to the jury without any testimony on the part of the defendant it must have found, under the view of the trial court, that the defendant was negligent.

The defense interposed was that the spark arrester was of the most approved form and pattern and of the kind in general use; that it was entirely efficient for the purpose; that it was not out of repair but in good condition; and that the engine was operated in a careful and proper manner. The burden was upon the defendant company to sustain these propositions by evidence that would satisfy the jury. It assumed the burden and produced evidence from which the jury would have been warranted in finding, not only that the spark arrester was of proper form and design, but that it was not out of repair, and that the engine was carefully operated. The testimony introduced by the defendant to sustain these propositions was equally conclusive as to each of them. The learned judge, however, permitted the jury to consider and determine only two of the three propositions: (a) whether the spark arrester was out of repair and in an inefficient condition, and (b) whether the company's employees were carefully and properly operating the engine at the time the building was fired. The other question the court withdrew from the jury and declared as matter of law that men

of knowledge and experience in the business had testified that the spark arrester was "as good as any that could take its place for the fuel that is to be used in the fire box," and that there was no evidence that it was not of proper form and design. For a like reason, consistency required the learned judge to make a similar ruling on the other two questions and direct a verdict for the defendant. He overlooked the decisive fact that the plaintiff had offered evidence, which he correctly held to be sufficient, to show negligence on the part of the defendant company in not equipping engine 846 with a spark arrester efficient in form and design. If, as testified by the plaintiff's witnesses, the stack emitted sparks that were larger than should come through a properly constructed spark arrester, that of itself was affirmative evidence that the arrester was not of a proper form and design and had not been properly constructed. To meet that evidence the defendant introduced its expert witnesses and they testified that the appliance was efficient in form and design. Here then was evidence against evidence, and the question was, therefore, for the jury. If there had been no evidence on the part of the plaintiff from which the jury could have found that the appliance was not of proper design, then the only evidence in the case on the subject would have been that of the defendant's expert witnesses, and had it stood uncontradicted and the witnesses been credible, the court might have withdrawn the question from the jury. But here, there was positive evidence from which a jury could find that the design of the appliance in use was not sufficient and the evidence to sustain the contrary view was that of witnesses whose credibility was for a jury. It is apparent, therefore, we think, that as the record stood at the close of the trial, the learned judge. erred in deciding the question of the efficiency of the design of the spark arrester. We do not agree with the learned counsel for the appellee that the binding instruction "amounted to nothing more in real effect than telling the jury that where there is uncontradicted evidence as to a certain matter in the case, it is their duty, if they believe the evidence, to be governed by it." That is frequently done and is what the learned court below should have done in this case. Here, there was no wit-

ness who testified that the spark arrester was not in proper form, and to that extent the evidence of the defendant's experts was uncontradicted; but there was other evidence in the case, facts, as held by the trial court, which would have warranted the jury in finding against the testimony of the defendant's experts and that the spark arrester was insufficient in form and design for the purpose for which it was intended.

The learned counsel for the appellee has cited Spaulding v. Railway Company, 33 Wis. 582, and several cases from other jurisdictions to sustain the court below in giving binding instructions in its favor. He evidently fails to distinguish the principle decided in those cases from the one which is applicable and must be enforced in determining the question in the present case. In the several jurisdictions in which the cases cited arose, it is held or is declared by statute that a presumption of negligence arises when property is set on fire by sparks emitted from a locomotive. In the Spaulding and other cases cited by the learned counsel it is held that such presumption is not one of fact but one of law, that it is not evidential, and that where there is no conflicting evidence and the testimony is clear and satisfactory against the presumption it is the duty of the court to hold, as matter of law, that the presumption is overcome. It is conceded, however, in those cases, that where there is a conflict of testimony the jury must determine what facts are proved. In an extended note to Continental Insurance Company v. Chicago and Northwestern Railway Company, 5 L. R. A. (N. S.) 99, a very recent Minnesota case, this question is discussed and all the cases on the subject are collected. In this note it is said: "Even those courts that go farthest in holding that, under the circumstances above stated, the question is for the court, and not for the jury, expressly or impliedly concede that, under any of the following conditions, the question is for the jury, and not for the court: (1) When the plaintiff's prima facie case is aided by evidence, circumstantial or otherwise, pointing to negligence on the part of the defendant; (2) when the defendant's evidence does not cover every fact essential to exonerate it from the charge of negligence, e. g., when such evidence, although showing that the engine was properly equipped,

does not show that it was properly operated; (3) when the evidence, even though it purports to cover the entire ground, is inclusive in character, and, even if believed, is not necessarily inconsistent with a finding that the defendant was negligent."

In this state, however, the presumption of negligence does not arise simply from the fact that the defendant's locomotive has communicated fire to the plaintiff's premises. The plaintiff must go further and show by evidence, direct or circumstantial, not only that the sparks from the defendant's engine communicated the fire to his building, but that they were emitted by reason of the defendant's negligence. The basis of the action in such cases is negligence, and the burden of establishing it is upon the plaintiff. He cannot rely upon a presumption, as in the states already referred to where that doctrine prevails, but he must introduce evidence, direct or circumstantial, from which the jury may find that the defendant company's negligence caused the fire. When, therefore, such evidence is introduced and the court holds it sufficient to go to the jury for the purpose of showing negligence, it is not a presumption of law that the defendant is called upon to meet, but affirmative evidence showing the defendant's negligence. This can only be met by other evidence, and when such is introduced for the purpose, there is a conflict of evidence and that necessarily sends the case to the jury. Philadelphia & Reading Railroad Company v. Kerst, 2 Walk. 480, was trespass against a railroad company to recover damages for the destruction of the plaintiff's house by fire which was communicated by sparks from a locomotive. The testimony on the part of the plaintiff was simply that when the engine passed the house it was throwing out large sparks and the wind was blowing towards the house. The testimony of the defendant was that the spark arrester was in proper condition and was of approved pattern. The court charged the jury that they could find for the plaintiff only in case they found that either the engine was not provided with an improved spark arrester, or that it was not in good condition, or that the train was run in such a careless and negligent manner as to cause the sparks to fly out. The court refused to direct a verdict for the defendant and the jury found for the plaintiff.

In affirming the judgment entered on the verdict this court said (p. 481): "If in fact the engine threw out sparks or balls of fire of the great size mentioned by some of the witnesses, it was clearly evidence to justify the jury in finding the engine was carelessly and negligently operated, or that the spark arresters were defectively constructed or out of repair. The apparently irreconcilable evidence was properly submitted to the jury in a correct and clear charge." To the same effect is Van Steuben v. Central R. R. Co., 178 Pa. 367, where it is said in the opinion (p. 376): "Such evidence [of the emission of coals or sparks of large size] required the submission of the case to the jury notwithstanding the testimony that the engine was provided with a sufficient spark arrester." The same principle is announced in the similar case of Hagan v. Chicago Railroad Company, 86 Mich. 615, where it is said by McGRATH, J., delivering the opinion of the court (p. 619): "Testimony cannot be said to be undisputed, when inconsistent with some other fact or circumstance, either established or regarding which testimony has been admitted. The court very properly declined to take the case from the jury, or to pass upon the conclusiveness of the testimony offered by the defendant." Slossen v. Railroad Company, 60 Iowa, 214, was an action for damages caused by the burning of the plaintiff's property by fire communicated from an engine belonging to the defendant company. In that case an instruction to the effect that if defendant had proved that the locomotive was in good condition, and this testimony is uncontradicted by any witness, the jury should find for the defendant was held erroneous "because such testimony might be overcome by facts established on the trial, such as the repeated setting out of fires by the same locomotive on the same day, and there was testimony in this case tending to establish such fact."

The first assignment of error must be sustained.

The second point for instructions presented by the plaintiff was substantially a motion to strike out the testimony of Mrs. Fleger, elicited on cross-examinations as to the fire of May 13, and justified the court in acting upon the question. It is not entirely clear that the answer of Mrs. Fleger was not responsive

to the question of the defendant's counsel, or that the answer should be stricken out. Of course, it may be assumed that the counsel was not seeking such information, and we have no doubt that on the next trial he will not give the witness an opportunity to tell the jury of fires which happened at dates so remote from the one giving rise to this litigation. There is no merit in the third assignment of error.

For the reasons given, the first assignment of error is sustained, and the judgment is reversed with a venire facias de novo.