# Badman *v.* Pennsylvania Railroad Company, Appellant.

*Railroads—Fire from sparks—Negligence—Evidence—Case for jury.*

1. In an action against a railroad company to recover damages for the destruction of buildings by fire alleged to have been caused by some sparks from an engine, the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where the evidence tends to show that the day on which the fire occurred was warm and dry, with a light wind blowing from the railroad towards the buildings; that there was no fire in the buildings at the time; that shortly after a particular engine, whose number was designated, had passed, the fire broke out; that this engine had for several days before given out large sparks; that just before the fire the engine was puffing and moving with a strain, although it had a light load and an easy grade; and that this method of operating the engine resulted in the emission of sparks, although it was equipped with a spark arrester and spark guard.

2. When the plaintiff can show by evidence, direct or circumstantial, not only that the sparks from the defendant's engine communicated the fire to his building, but that they were emitted by reason of defendant's negligence, it is sufficient to put the case to the jury for the purpose of showing negligence, and it is not a presumption of law that the defendant is called upon to meet, but affirmative evidence showing negligence. This can only be met by other evidence, and when such is introduced for the purpose, there is a conflict of evidence, and that necessarily sends the case to the jury.

Argued March 14, 1910. Appeal, No. 14, March T., 1910, by defendant, from judgment of C. P. Snyder Co., Oct. T., 1907, No. 12, on verdict for plaintiff in case of Rebecca Badman v. The Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for the destruction of buildings by fire. Before McClure, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $569. Defendant appealed.

*Errors assigned* were (1) in refusing binding instructions for defendant; (2) in overruling defendant's motion for judgment n. o. v.

*Andrew A. Leiser,* with him *Andrew A. Leiser, Jr.,* for appellant.—"Hard puffing" is not evidence of negligence: P. & R. R. R. Co. v. Yerger, 73 Pa. 121.

Where it is admitted or proved that the engine had an approved spark arrester in good condition the fact of a fire will not of itself prove negligence, and the court should direct a verdict for the defendant: McCully v. Clarke & Thaw, 40 Pa. 399–408; Lack. & Bloomsburg R. R. Co. v. Doak, 52 Pa. 379–381; Erie Ry. Co. v. Decker, 78 Pa. 293; Jennings v. R. R. Co., 93 Pa. 337; P. & R. R. R. Co. v. Schultz, 93 Pa. 341; Reading & Columbia R. R. Co. v. Latshaw, 93 Pa. 449; Penna. R. R. Co. v. Page, 11 Cent. Repr. 424.

*Albert W. Johnson* and *Frederic E. Bower,* for appellee.— The case was for the jury: Penna. R. R. Co. v. Stranahan, 79 Pa. 405; Phila. & Reading R. R. Co. v. Hendrickson, 80 Pa. 182; Penna. R. R. Co. v. Hope, 80 Pa. 373; Penna. Co. v. Watson, 81* Pa. 293; Haverly v. R. R. Co., 135 Pa. 50; Henderson v. R. R. Co., 144 Pa. 461; Byers v. R. R. Co., 222 Pa. 547; John Hancock Ice Co. v. R. R. Co., 224 Pa. 74; Stephenson v. R. R. Co., 20 Pa. Superior Ct. 157; Elder Twp. School Dist. v. Penna. R. R. Co., 26 Pa. Superior Ct. 112.

Negligence may be established by evidence that engine was improperly operated: Thomas on Negligence, 649; Chicago & Alton R. R. Co. v. Quaintance, 58 Ill. 389; Huyett v. Phila. & Reading R. R. Co., 23 Pa. 373; Phila. & Reading R. R. v. Hendrickson, 80 Pa. 182; Penna. R. R. Co. v. Hope, 80 Pa. 373.

OPINION BY ORLADY, J., April 18, 1910:

The plaintiff's property consisting of several acres of ground, adjoins the south side of the Sunbury & Lewistown branch of the Pennsylvania Railroad Company, and on it there was erected a brick dwelling house, frame stable, wagon shed, wood shed, and a number of small wooden outbuildings.

On June 27, 1906, a number of these buildings were consumed by fire, alleged by the plaintiff to have been started by sparks thrown from defendant's engine No. 951, and the jury specially finds that this fire was caused by the improper operation of this engine. The principal contention in the court below and in this court, is found in the first assignment of error, "that under all the evidence, the plaintiff is not entitled to recover and the verdict must be for the defendant." The case was tried with exceptional fairness, and after a painstaking consideration by the trial judge, a motion for judgment non obstante veredicto was overruled, and judgment was entered on the verdict. All charges of defect in construction of the engine and its equipment with a properly designed spark arrester, were eliminated on the trial, and the plaintiff's contention was narrowed down to the question, whether or not this engine had been carelessly and negligently operated.

The day on which the fire occurred was warm and dry, with a light wind blowing from the railroad toward the plaintiff's buildings, and the undisputed testimony shows that there was no local originating cause for the fire. The stove fire in the house had been allowed to go out at breakfast, after which time there was no fire about the house or any of the outbuildings. The members of the family and neighbors were engaged in their usual work in the neighborbood, and noticed the fire about half-past one o'clock, on the roof of one of the outbuildings, a few minutes after engine No. 951 had passed, when it was described by several witnesses to be, "as big as a hat," "like a bushel measure," "three or four feet in diameter," and it resulted in the destruction of the buildings and their contents.

On this day, engine No. 951 came to the station at Beaver Springs, at 1:30, hauling a train consisting of two flat cars,

one empty, and three steel cars loaded with ballast, passed the plaintiff's property on a level track which is about five feet above the adjoining property. The plaintiff stated that she was seated on her porch, saw the engine and train passing, and when they came back, "they started off like tearing everything up and steam all on, and went up there like crazy," and soon thereafter the fire was discovered. The puffing of the engine was so extraordinary as to attract the attention of other witnesses, who described it as "puffing more than usual," "pulling out lively," "drawing pretty sharp." "It reminded me of an engine standing on a track, with a heavy load, and that could not start it, and the wheels would slip." "Puffing as if going at a full rate of speed," and "very hard puffing as if the wheels had slipped."

One witness who had worked on this train for a number of days preceding the fire, stated that at times this engine would throw a great amount of sparks and cinders, as he states it, "I guess about as good a description as I could give you, as if you were out in a shower of hail, that would cut and burn," and when asked how often it would do this, replied, "Quite frequently; I should say all the time I had been about it."

The sparks and cinders discharged from this engine were described to be of the size of your finger and as big as an ordinary sized chestnut, and were hot enough to burn and blister, so that the employees on the train were obliged to go into the cabin for shelter and this state of affairs had existed for a number of days prior to the fire.

Neither the grade nor the weight of the train imposed an extra tax on the engine, and as aptly stated by the trial judge, in refusing the motion for judgment non obstante veredicto, "it is true there was no occasion for the loud puffing or heavy exhaust, as the engine was drawing a train of but five cars, three of which were loaded and two light, but this appears to be the weakness of the defendant's position, for the jury has no doubt found, and upon competent evidence, that notwithstanding the fact that the train could and should have been gotten under way with a moderate exhaust, the engine started off with more than usual puffing, so as to attract the attention

of a number of witnesses," and adds the pertinent query, "Can it be said that it is not negligence for this engineer, without occasion either to start his train or to maintain its speed, to cause his engine to exhaust heavily in close proximity to houses and buildings on a dry, hot day with the wind blowing toward them?" The defendant's experts admitted that it was not necessary on this occasion to work the engine hard, and that it would be carelessness on the part of the engineer to do so, so that, whether there was negligent or an unavoidable emission of the sparks which caused the loss of the plaintiff's property by fire, raised a pure question of fact, upon which a number of witnesses flatly contradicted each other, and the jury was properly called upon to decide it.

The origin of the fire is naturally the first essential of the plaintiff's case, and as was said in Penna. R. R. Co. v. Hope, 80 Pa. 373, the jury must determine whether the facts constitute a continuous succession of events, so linked together, that they become a natural whole, or whether the chain of events is so broken, that they become independent, and the final result cannot be said to be the natural and probable consequence of the primary cause—the negligence of the defendant. It was said in Henderson v. Railroad Company, 144 Pa. 461, "While it devolved upon the plaintiff to prove by preponderance of evidence that the fire was communicated by sparks or cinders from the railway engines, it need not be shown that any particular engine was at fault, but it will be sufficient if the fire is proved to have been set by any engine passing over defendant's railway, and the evidence may be wholly circumstantial; as, first, that it was possible for a fire to reach the plaintiff's property from the defendant's engines; and, second, facts tending to show that it probably originated from that cause and no other." In Byers v. Baltimore & Ohio R. R. Co., 222 Pa. 547, Judge POTTER quotes with approval what was said by Judge HENDERSON in Elder Township School District v. Penna. R. R. Co., 26 Pa. Superior Ct. 112, "While the burden is on the plaintiff to prove that the fire was negligently communicated by some engine of the company, the fact may be shown by circumstantial evidence.

Given the passing train, the accumulated combustible material, the fire breaking out therein within a few minutes after the train had passed, and communicating directly with the plaintiff's building, there exists a state of facts from which the jury would be authorized to draw the inference of negligence on the part of the defendant."

The facts in this case make it a specially strong one in the plaintiff's favor. A bright, clear day, with a number of witnesses in full view of the premises, no fire in the house or about any of the buildings, no necessity for a heavy draught of the engine, the previous record of the manner in which the engine had been operated, the wind blowing in the direction of the plaintiff's premises, the fires starting within but a few minutes after the engine was seen and heard to be working unusually hard, fully warranted the jury in believing them to form a combination of facts tending unequivocally to establish that the negligent operation of this engine was the sole cause of the fire: Hancock Ice Company v. Perkiomen R. R. Co., 224 Pa. 74; Haverly v. Railroad Co., 135 Pa. 50; Stevenson v. Railroad Co., 20 Pa. Superior Ct. 157; Van Steuben v. Central Railroad Co., 178 Pa. 367.

While it was contended by the railroad company, and without contradiction by the plaintiff that the engine was properly constructed and equipped with the modern appliances of a spark guard and arrester, it was just as clearly established that with all these mechanical devices in use on the engine, yet it is possible for an engineer to so manage his engine by the application of his draughts to the fire, that sparks and cinders may be forced through the spark arrester; that when the coal is in a certain degree of fusion, by the application of a great draught, the semifusible coal is forced through the spark arrester and, when exposed to the air, it cokes and expands to a size which at first view would contradict the existence of an efficient spark arrester, and that this fact is well recognized by all railroad operators, so that it is possible for coal in a semifusible state to be forced through proper spark arresters, and produce cinders of the size described by these witnesses, as "the end of your finger" or "a good sized chestnut."

The plaintiff's verdict does not depend upon a mere theory or a conjecture but is fully warranted by the testimony of a number of witnesses. As was said in Pennsylvania Company v. Watson, 81 * Pa. 293, "It would be difficult to prove that a building was set on fire by sparks from an engine, if the evidence in this case was not sufficient to prove that fact. The law in conferring the right to use an element of danger, protects the person using it, except for the abuse of his privilege. But in proportion to its danger to others, will arise the degree of caution and care he must use who exercises the privilege. Great danger demands higher vigilance and more efficient means to secure safety; where the peril is small, less will suffice. It is undoubtedly the duty of a railroad company using such dangerous machines fired up to intense heat, and running in close proximity to houses and buildings, to use the utmost vigilance and foresight to avoid injury. It is the duty of those who use these hazardous agencies to control them carefully, to adopt every known safeguard, and to avail themselves from time to time of every invention to lessen the danger to others: Frankford and Bristol Turnpike Co. v. Philadelphia & Trenton R. R. Co., 54 Pa. 345; Thomas v. New York, etc., R. R. Co., 182 Pa. 538. Care and vigilance is required in the operation of the engines, and this is as important a consideration in the defendant's operation of its engines, as is the equipment of the safety appliances, which are intended to prevent the emission of sparks: Railroad Company v. Latshaw, 93 Pa. 449; Albert & Lahr v. Northern Central Ry. Co., 98 Pa. 316. When the plaintiff can show by evidence, direct or circumstantial, not only that the sparks from the defendant's engine communicated the fire to his building, but that they were emitted by reason of defendant's negligence, it is sufficient to put the case to the jury for the purpose of showing negligence, and it is not a presumption of law that the defendant is called upon to meet, but affirmative evidence showing negligence. This can only be met by other evidence, and when such is introduced for the purpose, there is a conflict of evidence, and that necessarily sends the case to the jury.' In John Hancock Ice Company v. Perkiomen R. R. Co., 224 Pa. 74, Judge MESTREZAT sum-

marizes the question as follows: "The negligence of the defendant could arise in either or all of three different ways: (a) from an inefficient style or pattern of spark arrester; (b) from a proper spark arrester which was out of repair, or (c) from the negligent operation of the engine." This case was rightly submitted to the jury in a clear and adequate charge; Matthews v. Railroad Co., 18 Pa. Superior Ct. 10; Stevenson v. Railroad Co., 20 Pa. Superior Ct. 157; Derminer v. New York Central R. R. Co., post, p. 538.

The assignments of error are overruled and the judgment is affirmed.